THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellant, v. JAMES SANDERS, Petitioner-Appellee.

First District (4th Division)   No. 1—87—3178

Opinion filed January 24, 1991.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Walter P. Hehner, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Petitioner, James Sanders, and his codefendants, Clarence Underwood and James Talbert, were convicted of murder (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (a)(2)) following a jury trial in the circuit court of Cook County. The trial judge sentenced Sanders to the penitentiary for a term of 20 years. On direct appeal, this court affirmed the conviction and sentence in a Rule 23 order (107 Ill. 2d R. 23). *People v. Underwood* (1985), 137 Ill. App. 3d 1156.

Sanders subsequently petitioned for relief pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*). The trial court granted the petition. The court found that Sanders did not receive effective assistance of counsel due to defense counsel's joint representation of both Sanders and his codefendants. Accordingly, the court vacated Sanders' conviction and sentence and ordered that he receive a new trial.

The State assigns manifest error to the trial court's order. The State contends: (1) defense counsel was not under an actual conflict of interest manifested at trial, and (2) Sanders received effective assistance of counsel at all stages of the litigation. The State also contends that the use of the murder and voluntary manslaughter instructions at Sanders' trial does not require Sanders to receive a new trial.

We reverse the order of the trial court.

BACKGROUND

The record contains the following pertinent facts. Defendants were indicted for murder and armed violence. Prior to trial, the State entered a *nolle prosequi* on the armed violence count. Defendants were tried to a jury for murder.

The trial began on January 26, 1984. Immediately prior to the opening statements, the trial judge addressed the conflict of interest issue with defense counsel and defendants. The following colloquy occurred:

> "THE COURT: [Counsel], I have been told by yourself that you have discussed the issue of potential conflict between these three defendants and representation by one attorney. And you have discussed that with them in the past. And you have some observation on that point?
>
> [Defense Counsel]: Earlier on, when this case was first in the preliminary hearing, your Honor, I talked with the defendants and with the mother, to have more than one lawyer represent these young men. Going over the facts, I myself have

never found any inconsistency or any conflict wherein either of the defendants would be entitled to a severance, based on antagonistic defense or conflict of interest.

All three gentlemen have indicated, and continuously indicated to me that they want me to represent them. They are happy with my representation, and they feel that there is no conflict in the testimony, as to each of them.

Is that correct, gentlemen?

THE COURT: Clarence Underwood?

DEFENDANT UNDERWOOD: Yes, sir.

THE COURT: John Talbert?

DEFENDANT TALBERT: Yes sir.

THE COURT: And James Sanders?

DEFENDANT SANDERS: Yes, sir."

The State's case is summarized as follows. Eldora Stockley and Robert Hilliard each testified that they were with the victim, William Taylor, on August 26, 1982. They left Stockley's home to look for Taylor's bicycle, which defendant Talbert had borrowed earlier that day. Stockley drove them to a tavern at 1637 North Clybourn Avenue in Chicago, Illinois. They saw defendants, with Taylor's bicycle, outside of the tavern.

Stockley double-parked her station wagon in the street and they exited the automobile. Taylor approached Talbert and demanded the bicycle. Talbert refused. Taylor grabbed the bicycle and placed it in the back of Stockley's car. Taylor, Stockley, and Hilliard reentered the automobile. As they began to drive away, Talbert reached into the station wagon, removed the bicycle, and threw it on the ground. Stockley further testified that Talbert additionally stepped on and kicked the bicycle.

Taylor again exited the automobile and told Talbert to stop damaging the bicycle. The argument between Taylor and Talbert escalated. Hilliard further testified that Taylor also began to argue with defendant Underwood. At this point, Underwood produced a knife and began to swing it at Taylor. Underwood stabbed Taylor several times under the left arm; Talbert approached Taylor from behind and stabbed Taylor in the back. Sanders then hit Taylor in the face with a gin bottle, and Taylor fell to the ground. As police arrived at the scene, Talbert dropped his knife and fled. Underwood and Sanders repeatedly kicked Taylor and then fled. As they ran, Underwood threw his knife against the tavern building.

Chicago police officers William Cordes and Renaldi Guevara testified essentially that Underwood's knife bounced off of the tavern wall

and landed in the street. Underwood retrieved the knife and, after a brief struggle, was apprehended with it. A second knife was found two feet from Taylor's body. Talbert was arrested when he subsequently returned to the scene to retrieve the bicycle. Sanders was arrested a few days later.

The deputy medical examiner who performed an autopsy on the victim stated that the cause of death was multiple stab wounds. The victim's blood contained an alcohol level equivalent to seven or eight drinks. However, the autopsy did not yield any evidence of drug use.

A Chicago police department laboratory microanalyst testified that the knife that Talbert allegedly used to stab Taylor showed no traces of human blood; however, Talbert's shirt had human bloodstains on it. Underwood's jacket and the knife identified as his weapon also had bloodstains on them. Blood was also found on the glass bottle retrieved from the murder scene. No suitable fingerprints were found on the knives.

During opening statements, defense counsel stated that all three codefendants would assert self-defense. Venore Stockley, Eldora's sister, testified that, on the day of the murder, Eldora and defendants drank alcohol, and defendants additionally smoked marijuana. Hilliard and the victim also smoked marijuana and took other drugs.

Robert Smith and defendant Underwood testified essentially that they were standing outside of the tavern talking to the other defendants when Taylor arrived in Eldora's car. Taylor was under the influence of narcotics and alcohol and was angry at defendants. Talbert placed the bicycle in the automobile. Underwood asked Taylor to leave with the bicycle, but Taylor refused. Taylor pushed Underwood a few times; Underwood attempted to persuade Taylor to leave.

Taylor eventually displayed a knife and began to approach Sanders. Underwood then produced a knife and argued with Taylor. After the two drew near, Taylor rushed Underwood and both fell to the ground. Taylor struck his face on the side of Stockley's car as he fell; Sanders did not strike Taylor in any way. Taylor was stabbed during the scuffle on the ground. Talbert attempted to break up the fight and did not stab Taylor. Underwood raised himself after Taylor made a sound; he saw the police and ran.

At the close of defendant's case, defense counsel stated as follows:

> "[Defense counsel]: At this time the defense will officially rest. I have talked to Mr. Talbert and Mr. Sanders, and asked them if it was their desire to take the stand. They *** asked my advice, and it was my advice at that time that they not tes-

tify, so at this time when the case is called, I will officially rest in front of the jury."

At closing argument, the State argued that each defendant was accountable for the acts of the others. Therefore, all were equally culpable. Defense counsel argued that none of the defendants were accountable for Underwood's acts because Underwood acted in self-defense and in defense of Sanders.

The trial judge's instructions to the jury included instructions on the offenses of murder and voluntary manslaughter (Illinois Pattern Jury Instructions, Criminal, Nos. 7.01, 7.02, 7.05, 7.06 (2d ed. 1981) (hereinafter IPI Criminal 2d)), the doctrine of accountability (IPI Criminal 2d No. 5.03), and the defenses of self-defense and defense of others (IPI Criminal 2d No. 24—25.06).

On January 30, 1984, the jury convicted defendants of murder and the trial judge entered judgments on the verdicts. At the sentencing hearing, the trial judge denied defendants' post-trial motion. At the close of the hearing, the trial judge sentenced Sanders to a prison term of 20 years; Underwood received 28 years and Talbert received 24 years.

Sanders, Underwood, and Talbert filed a joint appeal. They contended the State failed to prove them guilty beyond a reasonable doubt of murder. They claimed also that the trial court erred by admitting irrelevant evidence regarding the victim's family, and by denying their request to have a State's witness disclose his drug use. They contended lastly they were denied a fair trial as a result of the trial court's evidentiary rulings and the prosecutor's improper remarks during closing argument. This court affirmed the convictions and sentences in a Rule 23 order (107 Ill. 2d R. 23). *People v. Underwood* (1985), 137 Ill. App. 3d 1156.

On August 11, 1986, Sanders filed, *pro se*, a post-conviction petition, and the State filed a motion to dismiss. The trial court subsequently appointed counsel for Sanders. With counsel's assistance, Sanders filed a supplemental post-conviction petition with supporting affidavits. Sanders alleged essentially that: (1) he was denied effective assistance of counsel as a result of the joint representation of him and his codefendants by a single attorney and that he did not knowingly waive this right, and (2) he was denied effective assistance of counsel due to inadequate representation both at trial and on direct appeal.

On September 17, 1987, at the close of a hearing, the trial court—the same judge that presided at Sanders' trial—granted the petition. The court found that Sanders did not receive effective assistance of

counsel due to defense counsel's joint representation of both Sanders and his codefendants. The court stated:

"THE COURT: All right. We have heard arguments on this. I'm not going to order a hearing because I have a very clear recollection of the facts in this case. Very heated trial between the state and defense counsel. And very clear recollection of the quality of the trial and the facts of the case.

It is my firm belief that Mr. Underwood, Mr. Talbert stand in one legal position and James Sanders in another legal position. In relationship to the arguments of defense counsel, motion to vacate jury verdict of guilty will be allowed. Verdict of guilty signed by the jury will be set aside and vacated."

The trial court vacated Sanders' conviction and sentence, and ordered that he receive a new trial.

The trial court subsequently denied the State's motion to reconsider. The State timely appeals.

OPINION

■ An action brought under the Post-Conviction Hearing Act (the Act) (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*) is not an appeal; rather, it is a collateral attack on a judgment of conviction. The purpose of the proceeding is to resolve allegations that constitutional violations occurred at trial, when those allegations were not, or could not have been, adjudicated previously. *People v. Jackson* (1987), 161 Ill. App. 3d 573, 576-77, 515 N.E.2d 219, 222.

■ The petitioner in a post-conviction proceeding is not entitled to an evidentiary hearing as of right; rather, the Act permits summary dismissal of a nonmeritorious petition. (*Jackson,* 161 Ill. App. 3d at 577, 515 N.E.2d at 222.) The petitioner has the burden to establish a substantial deprivation of constitutional rights (*People v. Griffin* (1985), 109 Ill. 2d 293, 303, 487 N.E.2d 599, 603); the petition must set forth facts that show the denial. (*Jackson,* 161 Ill. App. 3d at 577, 515 N.E.2d at 222.) This court will not disturb the trial court's determinations absent manifest error. (*Griffin,* 109 Ill. 2d at 303, 487 N.E.2d at 603.) Error, to be "manifest," must be clearly evident, clear, plain, and indisputable. *Ruggiero v. Public Taxi Service, Inc.* (1973), 16 Ill. App. 3d 754, 760, 306 N.E.2d 567, 572; see Black's Law Dictionary 867 (5th ed. 1979).

I

■ Sanders contends that his sixth amendment right to conflict-free representation was abridged when his trial counsel simultane-

ously represented him and his codefendants. The sixth and fourteenth amendments to the United States Constitution guarantee the right of effective assistance of counsel. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 343, 64 L. Ed. 2d 333, 343, 100 S. Ct. 1708, 1715; *People v. Vriner* (1978), 74 Ill. 2d 329, 337, 385 N.E.2d 671, 674.) The assistance of counsel means "assistance which entitles an accused to the undivided loyalty of his counsel and which prohibits the attorney from representing conflicting interests or undertaking the discharge of inconsistent obligations." *People v. Washington* (1984), 101 Ill. 2d 104, 110, 461 N.E.2d 393, 396.

■ However, the joint representation of criminal codefendants by a single attorney does not, by itself, violate this right because it is always *possible* that the interests of codefendants may diverge. (*Cuyler*, 446 U.S. at 348, 64 L. Ed. 2d at 346, 100 S. Ct. at 1718; *Vriner*, 74 Ill. 2d at 340, 385 N.E.2d at 675.) Therefore, to prevail on a claim of ineffective assistance of counsel based on joint representation of criminal codefendants by a single attorney, a defendant must show an *actual* conflict of interest manifested at trial. *Cuyler*, 446 U.S. at 350, 64 L. Ed. 2d at 348, 100 S. Ct. at 1719; *Vriner*, 74 Ill. 2d at 341, 385 N.E.2d at 676, quoting *People v. Berland* (1978), 74 Ill. 2d 286, 299-300, 385 N.E.2d 649, 655.

■ In the instant case, the trial court correctly noted that Underwood and Talbert stood "in one legal position" and Sanders stood "in another legal position." At trial, the State argued that Underwood and Talbert were culpable based on their acts, but Sanders was culpable based on accountability. Although codefendants are entitled to separate counsel if their positions are antagonistic, such antagonism is not necessarily present in every instance where the same attorney represents two or more codefendants. (*People v. Durley* (1972), 53 Ill. 2d 156, 160, 290 N.E.2d 244, 246; *People v. Jovicevic* (1978), 63 Ill. App. 3d 106, 116-17, 379 N.E.2d 665, 673.) Thus, the fact that Sanders' culpability was based on a different legal theory than that of Underwood and Talbert did not automatically constitute a conflict of interest. Rather, the issue is whether the joint representation of Underwood, Talbert, and Sanders involved defenses so antagonistic as to create an actual conflict of interest. See *People v. Nelson* (1980), 82 Ill. 2d 67, 72, 411 N.E.2d 261, 264.

■ As discussed above, Underwood testified essentially that he stabbed the victim in self-defense and in defense of Sanders. However, Sanders now argues that he had a defense that was not available to Underwood and Talbert—nonaccountability. In other words, Underwood and Talbert stabbed the victim and not Sanders; there-

fore, Sanders was not responsible for Underwood's acts. However, each defense concedes that Underwood stabbed the victim. Sanders' defense essentially is that, based on his nonparticipation, he is exceedingly less culpable than Underwood. A conflict of interest is not established where a single attorney represents one codefendant who is allegedly more culpable than another codefendant. (*Jovicevic*, 63 Ill. App. 3d at 117, 379 N.E.2d at 673.) We hold that the defense of Sanders was not antagonistic to the defense of Underwood and Talbert.

■ Sanders further alleged in his petition that defense counsel's failure to call him (Sanders) as a witness, so that he could offer evidence of his nonaccountability, demonstrated a conflict of interest. However, merely showing that this trial strategy was available to defense counsel does not establish an actual conflict of interest. Rather, "a positive basis must be found for concluding that an actual conflict of interests existed." (*Vriner*, 74 Ill. 2d at 342, 385 N.E.2d at 676.) Further, our courts have "refused to find hostility between the interests of criminal co-defendants based on the mere possibility that one strategy available to defense counsel would have helped one defendant at the expense of another." *People v. Echols* (1978), 74 Ill. 2d 319, 327-28, 385 N.E.2d 644, 648.

■ Thus, although an independent attorney might possibly have presented the defense of nonaccountability on behalf of Sanders, the mere existence of that possibility does not establish the presence of an actual conflict of interest. (See *People v. Howard* (1988), 166 Ill. App. 3d 328, 332-34, 519 N.E.2d 982, 985; *People v. Martinez* (1982), 104 Ill. App. 3d 990, 994, 433 N.E.2d 981, 985.) We hold that Sanders' defense counsel did not labor under an actual conflict of interest in jointly representing Sanders, Underwood, and Talbert. Consequently, Sanders' contention that he did not waive his right to conflict-free representation is of no avail.

## II

■ Sanders contends he was denied effective assistance of counsel based also on inadequate representation both at trial and on direct appeal. To establish a claim for ineffective assistance of counsel based on inadequate representation, a defendant must prove that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's unprofessional errors, the result would have been different. *People v. Scott* (1987), 159 Ill. App. 3d 459, 462-63, 512 N.E.2d 836, 838, citing

*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

Sanders claims that defense counsel failed to obtain his (Sanders') waiver of the right to conflict-free representation. He contends that this failure constituted inadequate representation. We cannot accept this contention, since we concluded that Sanders *did* receive representation that was free of an actual conflict of interest.

Sanders next claims that defense counsel refused to allow him to testify on his own behalf to protect the defense of Underwood. Sanders contends that this refusal was another example of inadequate representation.

The record does not support this claim. At the close of defendants' case, defense counsel stated that he advised Sanders not to testify. Additionally, counsel made this statement in Sanders' presence, yet Sanders was silent. A defendant in a criminal action has a constitutional right to testify in his own defense. However, as with any other right, the right to testify may be waived. (*People v. Knox* (1978), 58 Ill. App. 3d 761, 764-67, 374 N.E.2d 957, 960-62.) If Sanders wanted to testify on his own behalf, he could have voiced his desire or requested new counsel. However, he sat silently throughout the entire trial. Indeed, Sanders raised this issue only after he was convicted. As a result, we conclude that Sanders' failure to testify was a matter of trial strategy with which he agreed. See *People v. Berry* (1988), 172 Ill. App. 3d 256, 261, 526 N.E.2d 502, 506; *Knox*, 58 Ill. App. 3d at 767-68, 374 N.E.2d at 962.

Sanders next claims that he received inadequate representation at trial due to several alleged errors by defense counsel at trial. However, a reviewing court need not determine whether a defense counsel's performance was unreasonable prior to examining the prejudice that a defendant allegedly suffered. A court should dispose of a claim of ineffective assistance of counsel based on a lack of sufficient prejudice if it is easier to do so. *Scott*, 159 Ill. App. 3d at 463, 512 N.E.2d at 838.

In the case at bar, we conclude that defendant did not suffer any prejudice. On the direct appeal of this cause, we held that Sanders' conviction of murder was "well supported" by the evidence. (*People v. Underwood* (1985), 137 Ill. App. 3d 1156, (unpublished Rule 23 order).) Consequently, the errors that Sanders alleged would not have changed the outcome.

Sanders also claims that he received inadequate representation on direct appeal from his conviction. He assigns error to his appellate

counsel for failing to raise the issue of ineffective assistance of counsel.

We cannot accept this argument. Counsel is not obliged to brief every conceivable issue on appeal. It is not incompetence for counsel to refrain from raising those issues which, in his judgment, are without merit, unless his appraisal of the merits is patently wrong. (*People v. Barnard* (1984), 104 Ill. 2d 218, 230, 470 N.E.2d 1005, 1009; *People v. Frank* (1971), 48 Ill. 2d 500, 505, 272 N.E.2d 25, 28.) The two-part *Strickland* analysis is appropriate to test the adequacy of appellate counsel's representation as well as that of trial counsel, so a defendant must show that he was prejudiced by the defense. *Barnard*, 104 Ill. 2d at 237-38, 470 N.E.2d at 1012-13.

In the instant case, appellate counsel was not ineffective for choosing not to raise the issue of trial counsel's competence. We have concluded above that Sanders received effective assistance of counsel at trial. Thus, appellate counsel's appraisal of the merits of that issue was not patently wrong and Sanders was not prejudiced. (See *People v. Purifoy* (1988), 172 Ill. App. 3d 980, 991, 527 N.E.2d 654, 662.) We hold that Sanders received more than adequate representation both at trial and on direct appeal.

### III

For the first time in this post-conviction action, Sanders contends that the jury instructions on murder and voluntary manslaughter given at trial were erroneous under *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141. He contends that the alleged *Reddick* violation justifies a new trial. We cannot accept this contention, because our supreme court has recently held that *Reddick* does not apply retroactively to cases on collateral review. *People v. Flowers* (1990), 138 Ill. 2d 218, 237-42, 561 N.E.2d 674, 681-84.

In terms of the Post-Conviction Hearing Act, we find that Sanders' supplemental post-conviction petition did not set forth facts that show a denial of constitutional rights. Thus, Sanders is not entitled to a new trial. Further, we conclude that our finding is clear, plain, and indisputable. Accordingly, we reverse the trial court's order granting Sanders a new trial.

For the foregoing reasons, the order of the circuit court of Cook County is reversed.

Reversed.

McMORROW, and JOHNSON, JJ., concur.