THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOSEPH FRANZEN, Defendant-Appellant.

Second District   No. 2—92—0251

Opinion filed October 28, 1993.

M. Jacqueline Walther, of Kielian & Walther, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Joseph Franzen, appeals from an order of the circuit court of Du Page County denying his petition for post-conviction re-

lief. Defendant was convicted by a jury of two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2) (now codified, as amended, at 720 ILCS 5/12—14(a)(2) (West 1992))), aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(3) (now codified, as amended, at 720 ILCS 5/10—2(a)(3) (West 1992))), and aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a) (now codified, as amended, at 720 ILCS 5/12—4(a) (West 1992))). Defendant was sentenced, as an habitual criminal offender, to natural-life imprisonment without parole on the aggravated criminal sexual assault charges. He was also sentenced to concurrent extended terms of 30 years and 10 years for the offenses of aggravated kidnapping and aggravated battery, respectively.

Defendant's convictions and sentences were affirmed by this court on direct appeal in a published opinion, *People v. Franzen* (1989), 183 Ill. App. 3d 1051, with the exception that defendant's sentence for aggravated battery was modified to a five-year concurrent term. Defendant's subsequent motion to the supreme court for leave to file a late petition for leave to appeal was not allowed.

Defendant filed a petition for post-conviction relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.* (now codified, as amended, at 725 ILCS 5/122—1 *et seq.* (West 1992))), alleging numerous violations of his constitutional rights. The petition was supported by affidavits and exhibits. The trial court in a lengthy written order setting forth specific factual findings and legal conclusions dismissed defendant's petition, without an evidentiary hearing, as being patently without merit. This appeal ensued.

On appeal, defendant contends that the trial court erred in dismissing his post-conviction petition without an evidentiary hearing. Defendant maintains that the constitutional violations alleged in the petition were sufficient to entitle him to a hearing. Those alleged violations were: (1) that defendant was denied his right to counsel at trial and to present a defense; (2) that defendant was deprived of the effective assistance of appellate counsel; (3) that defendant was deprived of due process by the State's failure to present sufficient evidence to sustain defendant's convictions of aggravated criminal sexual assault and aggravated kidnapping; (4) that defendant was denied due process by his conviction of multiple offenses based upon the same aggravating factor; (5) that defendant was deprived of his rights to due process and a fair trial when the State withheld evidence from the defense prior to trial; (6) that defendant's fourth amendment rights and right to due process were violated as a result of improper police procedures; (7) that defendant was deprived of his rights to due process

and trial by jury because the jury was not properly instructed on the offense of aggravated criminal sexual assault; and (8) that defendant was denied his rights to due process and a fair trial by the State's concealment, prior to trial, of the whereabouts of defendant's wife.

The facts adduced at trial are summarized below.

At about 8:30 p.m. on September 17, 1986, Esther Lockwood arrived at the Rustic Lounge in West Chicago, where she had made plans to meet some friends. Because she did not see a parking place or her friends, Lockwood double-parked her car near the front door of the lounge and waited in the car. A few minutes later, a man approached the driver's side of her car. He was wearing a Rustic Lounge T-shirt and identified himself as the bouncer. The man told Lockwood that she could not park where she was and that he would show her where to park. He asked Lockwood to follow him, whereupon he led her to a parking place in the rear of the lot. The man walked in front of the car at times turning around to face Lockwood as he motioned her to follow him.

After Lockwood parked and got out of her car, the man told Lockwood that he would take her to the side door, as it was too crowded inside the lounge to enter through the front door. Lockwood followed him but hesitated when the man began walking away from the lounge. The man assured Lockwood that he was taking her around to the side door. Lockwood began following him again until he headed towards an area behind the Rustic Lounge and off the parking lot at which point she stopped. The man turned, hit Lockwood in the face, and then choked her. Lockwood lost consciousness.

The Rustic Lounge had a policy of locking its door once the bar got to capacity and of not allowing anyone to leave and reenter without permission. Michael West, a bouncer at the Rustic Lounge, was instructed by his boss to allow defendant to leave the bar to make a phone call at about 8:15 p.m. At approximately 9 p.m. he let defendant back in the bar. At the time, West noticed that the front of defendant, especially his shirt, was covered with mud and blood. West observed no bruises, scrapes, or cuts on defendant. Defendant hurried into the bar, got his friends, and left immediately.

West went outside to look around the parking lot; he did not see anybody or anything unusual. About 15 or 20 minutes later he saw Lockwood walking very weakly toward the door of the lounge. She was naked from the waist down, her shirt was ripped open, and she had mud and blood covering her. In West's opinion, her face was completely mutilated. Lockwood's shoes, buttons from her blouse, keys, bra, pantyhose, and purse were found in a wet, matted-down area 30

feet into a sorghum field behind the Rustic Lounge. A matted-down area resembling a path went deeper into the field and led to Lockwood's jeans which were discovered about 160 feet from the sidewalk area of the parking lot.

When Lockwood awoke in the hospital the next day, she was in great pain. She had been badly beaten and had severe injuries. A segment of plant stalk had been inserted into her rectum. Lockwood's vaginal area was bruised and, according to the treating physician at the hospital where she was taken, contained plant-type material and mud.

Defendant testified that he drove to the Rustic Lounge after work on September 17 with his employer, Russell Shimp, and a co-worker, Michael DeBrun, in Shimp's van, arriving at the bar about 3:30 p.m. The three men drank into the evening, each consuming a pitcher of beer and at least one mixed drink. During the evening, defendant purchased Rustic Lounge shirts for Shimp and himself. Both of them put on the shirts. Two bouncers, as well as several other patrons, were wearing similar shirts.

After 7 p.m. defendant, Shimp, and DeBrun each left the bar, separately, to make telephone calls from a mobile telephone in Shimp's van. About 8:15 p.m., defendant again left the bar. According to defendant, he wanted to go home, but Shimp was not ready to leave. Defendant had the keys to Shimp's van so he entered the van and lay down. Defendant said that he was tired and a little intoxicated.

Defendant stated that he needed to urinate so he tried to get back into the Rustic Lounge. He was unable to do so, as the doors were locked, and no one was at the door. Due to the capacity crowd that evening, the lounge's doors were locked from before 8 p.m. until past 9 p.m. According to defendant, he went near some bushes off the parking lot to urinate because he could not get back inside the bar. Defendant said that, while he was urinating, he was jumped from behind and knocked to the ground. He and his assailant wrestled, and defendant hit and kicked the man. Defendant returned to the bar and beat on the door until the bouncer, West, admitted him. Defendant went over to his companions and told them what had happened to him. The three men then left in Shimp's van.

Both Shimp and DeBrun testified that during the ride back to Shimp's home defendant told them that he had talked to a blonde lady in the parking lot. He also told them that he had been jumped by two guys and a woman. Neither Shimp nor DeBrun noticed any injuries on defendant's face or body. Shimp and DeBrun dropped defendant off at Shimp's house and then returned to the bar.

The next morning defendant was stopped by the Joliet police on his way to work; he was arrested, photographed, and released. When defendant arrived at his jobsite, both Shimp and DeBrun told defendant that the police were looking for him in connection with an assault on a woman. Shimp told defendant that he did not want him around anymore and that the only way he would allow defendant to continue to work for him was for defendant to bring Shimp the shirt defendant had been wearing on the previous night to prove that he did not assault the woman. Defendant told Shimp that he had thrown out the shirt somewhere in Joliet.

Defendant then went home and with the help of his wife and mother altered the shirt. Defendant's wife testified that defendant's mother laundered the shirt. Next, the wife took a razor blade, cut her leg, took blood from her leg, and smeared it on the clean shirt in the same places where blood had been before the shirt was washed. Then, defendant put on the shirt and rolled around in the dirt. The three went inside where they poured beer on the shirt and blew cigarette smoke on it so it would smell like it had been in a bar.

The next day, defendant took the shirt to Shimp. Shimp tore the shirt in half and gave it to police, one half at a time, on two separate days. Shimp also gave police defendant's work boots which were full of mud.

On that same day, September 19, the police went to the hospital and showed Lockwood a photo spread consisting of six photographs. Lockwood picked defendant's photograph as that of the person who had attacked her. Lockwood acknowledged that she had given police a physical description of her assailant, but she believed that this had occurred after being shown the photo spread. The detective who showed her the photographs stated that she had given the description prior to being shown the photo spread.

Defendant was convicted of aggravated criminal sexual assault based on anal penetration, aggravated criminal sexual assault based on vaginal penetration, aggravated kidnapping and aggravated battery. Based on defendant's prior criminal record, the trial court sentenced defendant, as an habitual criminal, to concurrent sentences of natural-life imprisonment on the aggravated criminal sexual assault charges. The court also sentenced defendant to extended terms of 30 years' imprisonment for aggravated kidnapping and 10 years' imprisonment for aggravated battery.

On direct appeal, defendant was represented by the appellate defender. This court affirmed defendant's convictions and sentences but reduced the extended-term sentence on the aggravated battery con-

viction to five years. (*People v. Franzen* (1989), 183 Ill. App. 3d 1051.) The appellate defender did not file a petition for leave to appeal.

Defendant's parents retained private counsel after the time to file a petition for leave to appeal expired. The supreme court initially granted defendant leave to file a late petition but, then, upon motion by the State for reconsideration, reversed its order allowing the late filing.

Defendant, subsequently, filed a petition for post-conviction relief which was summarily dismissed by the trial court. This appeal ensued.

Defendant maintains that the trial court erred in summarily dismissing his petition for post-conviction relief because the constitutional violations set forth in his petition merited an evidentiary hearing. The purpose of a post-conviction petition is to resolve allegations that constitutional violations occurred at trial which were not, or could not have been, adjudicated previously. (*People v. Green* (1991), 218 Ill. App. 3d 71, 75.) An evidentiary hearing should be conducted when the petitioner makes a substantial showing of a violation of constitutional rights which is supported by the record in the case or by accompanying affidavits; however, a petitioner is not entitled to an evidentiary hearing as a matter of right. *People v. Silagy* (1987), 116 Ill. 2d 357, 365.

Defendant bears the burden of establishing a substantial deprivation of constitutional rights, and the trial court is authorized to dismiss summarily a petition for post-conviction relief if defendant fails to set forth the facts which make the required showing as to the claimed constitutional deprivation. (*Green*, 218 Ill. App. 3d at 75.) Determinations by the trial court will not be disturbed absent manifest error. (*People v. Sanders* (1991), 209 Ill. App. 3d 366, 373.) To be "manifest," error must be clearly evident, clear, plain, and indisputable. (209 Ill. App. 3d at 373.) The judgment of the reviewing court on a previous appeal is *res judicata* as to all issues actually decided, and any claim that could have been presented to the reviewing court in the direct appeal is, if not presented, deemed waived. *Silagy*, 116 Ill. 2d at 365.

Defendant's first alleged constitutional violation is that he was denied his right to counsel and to present a defense when the trial court refused to allow his newly retained counsel a continuance to prepare for trial. That counsel appeared on the date set for trial and requested a continuance, indicating that he had just been retained the weekend before trial. Defendant asserts that the court's denial forced retained counsel to trial without an opportunity to investigate the case, to review all court documents, discovery materials, and pretrial

statements made by prosecution witnesses, and to meet with defendant on more than one occasion.

■ Defendant acknowledges that the issue as to a violation of his right to counsel was raised on direct appeal but asserts that it was framed in terms of a denial of his sixth and fourteenth amendment rights and not in terms of a denial of the right to prepare and present a defense as set forth in his post-conviction petition. Defendant appears to ignore that the constitutional right to counsel incorporates the right to adequately prepare and present a defense. (*People v. Trolia* (1982), 107 Ill. App. 3d 487, 498.) Since we determined on direct appeal that defendant was not denied his constitutionally guaranteed right to counsel, we consider the issue of an adequate defense was also decided at that time. Based on our prior determination, the issue is, therefore, *res judicata.*

Defendant contends, however, that the facts presented in his post-conviction petition and supporting affidavits, which were not before this court on direct appeal, were sufficient to overcome *res judicata* principles. Defendant maintains that these facts make a substantial showing that the presentation of defendant's defense and his right to counsel were prejudiced by the trial court's refusal to allow retained counsel a continuance in order to prepare. These facts indicate what retained counsel could have or would have done had he been granted the continuance.

Defendant's petition and affidavits, however, overlook the fact, as revealed by the record, that in denying retained counsel's motion for a continuance the court informed counsel that he could renew that motion after reviewing discovery matters as long as it was made before the trial commenced. The record also reveals that counsel on the day of the original motion to continue met later with the public defender to discuss the case and to obtain copies of the public defender's reports and abstracts. Additionally, at that time he was introduced to the public defender's investigator and told that the investigator was available for his use. When trial commenced on the next day for jury selection, retained counsel did not renew his motion for a continuance. By failing to take advantage of the court's offer to renew his motion to continue, retained counsel waived any objection to the court's denial of his motion. We note, from the record, that despite the court's denial of the motion to continue defendant's retained counsel adequately prepared defendant's defense and performed competently throughout the trial. We also note that the evidence of defendant's guilt was overwhelming.

Accordingly, we conclude that defendant's first alleged constitutional violation is barred by principles of *res judicata* and that defendant cannot overcome these principles with factual statements of what he would have done if granted a continuance since defendant proceeded to trial without further objection.

As his second constitutional violation, defendant alleges that he was denied the effective assistance of appellate counsel because his appointed appellate counsel failed to raise on direct appeal the issues raised in defendant's post-conviction petition and also failed to file a petition for leave to appeal on his behalf. To establish the ineffective assistance of appellate counsel, defendant must show that his counsel's failure to raise an issue was objectively unreasonable and that, but for this failure, there was a reasonable probability that his conviction would have been reversed. (*People v. Stewart* (1990), 141 Ill. 2d 107, 119.) Appellate counsel is not obliged to brief every conceivable issue on appeal (*People v. Sanders* (1991), 209 Ill. App. 3d 366, 377), and it is not incompetence for counsel to refrain from raising those issues which counsel believes are without merit, unless counsel's appraisal of the merits is patently erroneous (*People v. Lostutter* (1992), 227 Ill. App. 3d 1052, 1054). To support a claim of incompetency of appellate counsel in a post-conviction proceeding, defendant must establish substantial prejudice to him which likely affected the outcome of his case. *People v. Adams* (1987), 164 Ill. App. 3d 742, 747.

In his post-conviction petition defendant sets forth six issues which he contends should have been raised on direct appeal. These issues would not normally be cognizable in their own right in a post-conviction proceeding because they were not raised in the direct appeal. Nevertheless, we review them here for the purpose of determining whether the issues were so patently meritorious that the failure of appellate counsel to raise them on direct appeal constituted incompetence of appellate counsel. As shown below, we have determined that these issues lack merit and that, therefore, defendant did not suffer any prejudice from appellate counsel's failure to raise them in the direct appeal.

Defendant also claims that appellate counsel was ineffective in failing to initiate a petition for leave to appeal on his behalf. The failure to file an appeal can constitute ineffective representation (*People v. Fernandez* (1991), 222 Ill. App. 3d 80, 83), whether it be an appeal to the appellate court or the supreme court. The defendant, however, must present adequate proof that he communicated such wishes to his counsel in the form of affidavits, records, or other evidence containing

specific facts. (222 Ill. App. 3d at 83.) Such proof is not present in the record before us.

Defendant's affidavit in support of his post-conviction petition makes no reference to an appeal to the supreme court. Moreover, the affidavit attached to his motion for leave to file a late petition for leave to appeal, which was submitted by retained counsel a month and a half after the time for filing such a petition had expired, shows only that defendant's appointed appellate counsel advised him by letter that she would not file a petition. Such reference does not establish that defendant communicated to his appellate counsel a desire to appeal this court's prior decision. Absent some proof that defendant requested counsel to file a petition for leave to appeal, we cannot say that counsel's failure to file such a petition constituted ineffective assistance of appellate counsel.

We conclude that defendant has failed to meet his burden of proving he was denied adequate representation on direct appeal. The following review of those issues defendant claims appellate counsel should have raised supports this conclusion. Before addressing those issues, however, we feel compelled to note that in deciding the next six issues we have found the State's brief to be less than helpful. The State has cited little, if any, authority for its positions and has based those positions in large part on conclusional statements unsupported either by citation to the record or to authorities.

Defendant contends that appellate counsel was incompetent in failing to argue on appeal that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault based on vaginal penetration and of aggravated kidnapping. Although issues regarding the sufficiency of the evidence are not proper in post-conviction proceedings, such evidentiary issues are cognizable for the limited purpose of determining whether appellate counsel's failure to raise the sufficiency of the evidence on direct appeal constituted ineffective assistance. *People v. Jackson* (1987), 161 Ill. App. 3d 573, 583.

When considering a challenge to the sufficiency of the evidence, a court of review must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Denny* (1991), 221 Ill. App. 3d 298, 301.) Therefore, we will not substitute our judgment for that of the trier of fact on questions involving the sufficiency of the evidence and will not reverse a criminal conviction unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to

justify a reasonable doubt of guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 261; *People v. Sehr* (1986), 150 Ill. App. 3d 118, 122.

Defendant first maintains that he should not have been found guilty of aggravated criminal sexual assault based on vaginal penetration because insufficient evidence existed to demonstrate beyond a reasonable doubt that a vaginal penetration occurred. To prove vaginal penetration had occurred in this case the State had to show that an object had entered the victim's vagina. Any intrusion, however slight, would constitute vaginal penetration. (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(f) (now 720 ILCS 5/12—12(f) (West 1992)).) Moreover, evidence of the admission of semen was not required to prove sexual penetration of the vagina. Ill. Rev. Stat. 1985, ch. 38, par. 12—12(f) (now 720 ILCS 5/12—12(f) (West 1992)).

Here, evidence of penetration of Lockwood's vaginal area was presented by the physician who examined her at the hospital shortly after the attack. In conducting his examination the doctor stated that he observed bruises and plant-type material and mud in the vaginal area. A photograph depicting these observations was identified by the doctor and entered into evidence. Lockwood's family physician, who examined her the following morning, stated that he thought there was some old blood present in the vaginal orifice. Based on this evidence, it was possible for the jury to infer that some plant-type material was used to penetrate the victim's vagina, even if only slightly.

The issue of whether vaginal penetration occurred was a question of fact for the jury to determine. (*People v. Harris* (1989), 187 Ill. App. 3d 832, 838.) Given the evidence presented and viewing it in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of aggravated criminal sexual assault based upon vaginal penetration.

Defendant also maintains that the evidence was insufficient to find him guilty beyond a reasonable doubt of aggravated kidnapping. In particular, defendant argues that "secret confinement" is the "gist" of kidnapping and that no secret confinement was shown in the instant case. We do not agree.

The "secret confinement" element contemplated by the aggravated kidnapping statute (Ill. Rev. Stat. 1985, ch. 38, par. 10—2 (now codified, as amended, at 720 ILCS 5/10—2 (West 1992))) may be shown by proof of the secrecy of confinement or the place of confinement. (*People v. Mulcahey* (1978), 72 Ill. 2d 282, 285; *People v. Riley* (1991), 219 Ill. App. 3d 482, 487.) "Secret" has been variously defined as "[c]oncealed; hidden; not made public; *** kept from the knowl-

edge or notice of persons liable to be affected by the act." *Mulcahey*, 72 Ill. 2d at 285.

Defendant relies on *People v. Sykes* (1987), 161 Ill. App. 3d 623, to argue that the dragging of the victim, Lockwood, from one outdoor location to another does not establish secret confinement. *Sykes*, however, is clearly distinguishable from the case at bar. In *Sykes*, defendant grabbed the 10-year-old victim as she was walking near a playground and pulled her into an alley. The two proceeded through two or three alleys and down a street until they reached a partially vacant building. After the manager of the building denied defendant entry into the building, defendant pulled the victim back down the street. Upon seeing a man across the street, the victim yelled for help, and defendant ran off. The court in *Sykes* concluded that the foregoing did not establish "confinement" as envisioned by the Illinois courts nor did it comport with the "secret" component of the statute, as the victim was not concealed, hidden, or not made public.

In the instant case defendant choked Lockwood rendering her unconscious and then dragged her 160 feet behind a fence into a sorghum field where the sorghum plants were of a height to conceal the defendant and Lockwood from anyone who might have wandered out into the parking lot. That Lockwood was concealed in that particular location was shown through the testimony of the officers investigating the crime and the photographs of the place, both of which indicated that the soil had been disturbed and the plant material matted down at that location. Also, Lockwood's jeans were found in this spot. Although confinement most commonly denotes the enclosure or confinement within something such as a house or car (*Riley*, 219 Ill. App. 3d at 487), we do not believe it is strictly limited to those types of places. Here, where the victim was dragged against her will from a well-lit parking lot to a place in a dark field where she was concealed from public view and not free to leave, we find secret confinement was proven. Under the factual circumstances of this case, sufficient evidence was presented to sustain defendant's conviction of aggravated kidnapping.

We conclude that it was not incompetent of appellate counsel to fail to raise in the direct appeal the instant issue pertaining to the sufficiency of the evidence. Nor was it improper for the trial judge to find that such issue did not warrant post-conviction relief.

Defendant next contends that it was incompetent for appellate counsel not to have raised on direct appeal that defendant was denied due process where he was convicted of multiple offenses based upon the same aggravating factor. Defendant maintains that the aggravat-

ing factor alleged as to both the aggravated kidnapping and the aggravated battery was the infliction of great bodily harm and that this harm was the beating and choking of Lockwood. The record belies defendant's contention.

■ The indictments, jury instructions, and arguments at the hearing on defendant's motion for a new trial as well as the evidence presented at trial establish that the aggravated battery and the aggravated kidnapping were based on different aggravating factors. The basis for the aggravated battery was clearly the initial beating and choking of Lockwood in the parking lot. The separate conduct which gave rise to the aggravated kidnapping was the sexual assault and harm which occurred after Lockwood was dragged unconscious across the parking lot and 160 feet into a sorghum field. Consequently, the jury was justified in finding defendant guilty of both the offense of aggravated battery and the offense of aggravated kidnapping.

We find that the trial court did not err in denying defendant post-conviction relief on the alleged constitutional violation raised in the instant issue and that appellate counsel, likewise, was not incompetent for failing to raise the issue in the direct appeal.

In his next contention, defendant argues that he received inadequate representation on appeal when appellate counsel failed to raise the issue of the State's act of withholding evidence from the defense. Defendant maintains that the State's conduct constituted a deprivation of his constitutional rights to due process and a fair trial.

The prosecution has a duty to disclose exculpatory material to the defense, and conduct by the prosecution in withholding such evidence from the defense suggests error of a constitutional magnitude. (See generally *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392; *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) Undisclosed evidence will be considered material only if its "suppression undermines confidence in the outcome of the trial" (*United States v. Bagley* (1985), 473 U.S. 667, 678, 87 L. Ed. 2d 481, 491, 105 S. Ct. 3375, 3381) and if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" (473 U.S. at 682, 87 L. Ed. 2d at 494, 105 S. Ct. at 3384). It is apparent from the record that such is not the situation here.

The withheld evidence to which defendant refers was the description of her assailant that Lockwood had given police. The fact that this description had been given to the police was revealed during the cross-examinations of Lockwood and the detective supervising the investigation. Although the State should have known of this evidence

and put it into discovery, it is clear from the record that the prosecution was unaware of the description until this testimony. Moreover, the withheld evidence was anything but exculpatory. Lockwood's description of her assailant was consistent with the description of the defendant. Consequently, the disclosure of the description would not have created a reasonable probability of a different outcome in the trial. Rather, it would have merely substantiated that Lockwood got a good look at her assailant and that that assailant was defendant.

Whether an actual violation of constitutional rights occurs depends upon factors which include the character of the evidence withheld and the prosecution's knowledge of the existence of the evidence. (*Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392; *People v. Harris* (1989), 129 Ill. 2d 123.) Given the character of the withheld evidence here and the prosecutor's belief that all discovery in the State's possession had been tendered to the defense, we cannot say that the State's suppression of the evidence constituted constitutional error. We conclude, therefore, that appellate counsel's failure to raise the instant issue did not amount to incompetence and that the trial court's denial of an evidentiary hearing on this basis did not amount to error.

Defendant also asserts that appellate counsel was incompetent because counsel failed to raise the issue that defendant's fourth amendment rights and right to due process were violated as a result of police procedures. In particular, defendant maintains that his arrest without probable cause, the obtaining of evidence, *i.e.*, his photograph, as a result of that arrest, and the utilization of that photograph in a photographic lineup shown to the victim were improper.

On a petition for post-conviction relief, the scope of review is limited to constitutional issues which have not been, and could not have been, previously adjudicated. (*People v. Seidler* (1990), 203 Ill. App. 3d 666, 668.) In the instant case, the issue regarding whether defendant's fourth amendment rights were violated when he was arrested by the Joliet police on the morning following the attack on Lockwood was previously adjudicated at a hearing on defendant's motion to suppress the photograph taken of defendant at the police station. At that hearing the trial court determined that probable cause existed for defendant's arrest and that, as a result, the police had the right to take defendant's photograph as part of the arrest procedure. Having been previously adjudicated at the trial level and not subsequently raised on direct appeal, the constitutional deprivations defendant raises in the instant issue would generally be waived. *Seidler*, 203 Ill. App. 3d at 668.

However, a post-conviction claim that could have been presented to a reviewing court on direct appeal and was not may be raised thereafter as part of a claim that defendant received ineffective assistance of appellate counsel on direct appeal. (*People v. Winsett* (1992), 153 Ill. 2d 335, 346.) The alleged incompetence of appellate counsel forms the basis of the issue in question, but our review of the record convinces us that appellate counsel did not act incompetently in failing to raise an issue based on improper police procedures.

Probable cause for an arrest exists when facts and circumstances known to the arresting officer are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested had committed the offense. (*People v. Sauer* (1988), 177 Ill. App. 3d 870, 879.) Where officers are working together in investigating a crime, the knowledge of each constitutes the knowledge of all, and probable cause can be established from all the information collectively received by the officers even if not known to the arresting officer. (*People v. Fox* (1987), 155 Ill. App. 3d 256, 263-64.) With respect to a motion to suppress evidence based on lack of probable cause to arrest, the burden of proof is on defendant. (*Sauer*, 177 Ill. App. 3d at 879.) A court's finding of probable cause, or lack thereof, will not be disturbed on appeal unless it is manifestly erroneous. *People v. Earley* (1991), 212 Ill. App. 3d 457, 465.

The testimony at the hearing on defendant's motion to suppress established that Detective Thomas Vosburgh of the Du Page County sheriff's office arrived at the Rustic Lounge at about 10:10 p.m. on September 17, the evening of the attack. While at the bar, Vosburgh spoke to Rusty Shimp and Michael DeBrun, defendant's companions. Shimp told the detective that defendant had left the bar about 8 p.m. and was gone approximately 45 minutes. When defendant returned, he was covered with mud and had blood on his shirt. Defendant had told Shimp that he had gotten into an argument outside with two individuals, that a blonde woman had jumped on him, and that he had had to punch her. Defendant had told Shimp that he had to leave immediately. Vosburgh related that Shimp gave him a description of the defendant and of defendant's vehicle.

Vosburgh also testified as to a conversation he had with Charles Rogers, the owner of the Rustic Lounge, who told Vosburgh that he observed defendant leave the bar covered with mud and blood. According to Rogers, he heard defendant say that he had been in a fight with two individuals in the parking lot. Rogers told Vosburgh that he had then checked the lot but saw no signs of a struggle. Fifteen to

twenty minutes after defendant left the victim appeared at the door of the lounge.

Vosburgh also talked to James Hammond, a patron at the bar that evening. Hammond related that he saw defendant come into the bar covered with mud and blood. When Hammond asked defendant what had happened to him, defendant said he was jumped by two individuals.

Vosburgh stated that he returned to the sheriff's office at about 12:30 a.m. on September 18 and ran a background check on defendant which revealed an extensive criminal history, including two sexual offenses. Vosburgh's investigation turned up two addresses for defendant, one of which was in Joliet.

Detective Michael Prunty of the Du Page County sheriff's office testified at the suppression hearing that he located defendant's vehicle at the Joliet address. Prunty then contacted the watch commander of the Joliet police department and asked that he place defendant's vehicle under surveillance.

Officer Paul Albright of the Joliet police department testified that at about 3 a.m. on September 18 he was instructed by his watch commander to place defendant's vehicle under surveillance. Albright was provided with a description of defendant and was told that probable cause existed to arrest him for aggravated criminal sexual assault. At approximately 6:19 a.m. the officer observed defendant leave in his vehicle. At about 6:25 a.m. Albright stopped defendant and placed him under arrest for aggravated criminal sexual assault. Albright recalled that defendant was then transported to the police station where he went through the normal booking procedures, including being fingerprinted and photographed.

Apparently unbeknownst to Albright, Detective Prunty had contacted the Joliet police department about 5:30 a.m. on September 18 after Prunty and Vosburgh learned that Lockwood would be in no condition to view a photographic lineup for several days. Prunty asked the department to cease its surveillance of defendant. When Prunty was subsequently informed that the department had arrested defendant, he phoned the department, telling them to release defendant. Prunty also went to Joliet to pick up the photographs and fingerprints taken of defendant.

■ From the testimony at the suppression hearing the trial court concluded that the collective knowledge and information of all the officers involved was sufficient to establish that probable cause existed to arrest defendant at the time he was apprehended by Officer Albright. Collectively, the officers knew that defendant had been ob-

served by several individuals with mud and blood on him shortly before the battered victim had appeared at the door of the bar; that defendant had told his companions, Shimp and DeBrun, that he had to leave immediately; that defendant had told variations of his alleged altercation in the parking lot, including one version that he had been jumped by a blonde woman; and that defendant had had a prior record of sex offenses. This information was sufficient to lead a reasonable man to believe that an offense had been committed and that defendant had committed it. We conclude that the trial court did not err in finding that probable cause existed for defendant's arrest.

As defendant's motion to suppress his photograph was based on the lack of probable cause to arrest and as defendant did not meet his burden of proving the lack thereof, there was nothing improper in the obtaining of the photograph as part of the arrest procedures and in subsequently using that photograph in a photographic lineup. The photograph and the resulting identification did not constitute "fruits" of an unconstitutional arrest as defendant claims. *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.

Defendant maintains that showing the photograph to Lockwood before she gave police a description of her assailant was improperly suggestive. We note that during trial it was brought out by Detective Vosburgh that Lockwood did provide a description to police prior to viewing the photographic lineup prepared by the police and that that description was consistent with a description of defendant.

The photographic lineup consisted of six black and white photographs of identical size. Lockwood testified that she immediately spotted the individual who had attacked her but, nevertheless, forced herself to look at the other photographs to be sure. During her account of the events leading up to the attack by defendant, it was very apparent that Lockwood had gotten a very good look at defendant's face. When he first told her that she could not park in front of the door to the lounge, defendant stooped down by the driver's door of her car and spoke to her through her car window. He was no farther than a foot away from her. As he led her to the back of the bar to a parking place, Lockwood remembered that defendant turned around several times, facing her, as he motioned her to follow him. After Lockwood parked, defendant again stooped down by her car window and spoke with her. On each occasion the lighting was good. When defendant subsequently hit Lockwood in the face and then choked her, it is apparent from her testimony that he was standing in front of her. In light of all these circumstances, it cannot be said that the use of defendant's photograph in a photographic lineup was improperly

suggestive. Lockwood did not need any assistance in identifying defendant as her attacker.

In light of the above, we find defendant has failed to show that improper police procedures resulted in a denial of his fourth amendment rights and right to due process. The trial court, therefore, did not err in dismissing this constitutional claim, and appellate counsel was not incompetent for failing to raise the claim.

Defendant next argues that appellate counsel was incompetent for failing to argue that defendant was deprived of his rights to due process and trial by jury when the jury was not properly instructed on the offense of aggravated criminal sexual assault. Specifically, defendant maintains that the jury instructions omitted an essential element of the crime, *i.e.*, the mental state required for the offense and, in particular, for the crime of vaginal penetration.

Initially, we are in agreement with the trial court which, in denying defendant's post-conviction petition, found that defendant's failure to object at trial to the instructions pertaining to aggravated criminal sexual assault tendered by the State, to offer an alternative instruction, or to raise the issue of improper instructions in his post-trial motion constituted a waiver of the issue. (*People v. Leonard* (1988), 171 Ill. App. 3d 380, 383.) While we recognize that substantial defects in jury instructions in criminal cases may be considered even though the defendant has failed to make timely objections, this exception will be invoked only to correct grave errors or to correct errors in cases so closely balanced that fundamental fairness requires that the jury be properly instructed. (*People v. Reddick* (1988), 123 Ill. 2d 184, 198.) Neither situation exists here. The instant case was not closely balanced, nor did the trial court's failure to instruct the jury *sua sponte* on a mental state amount to grave error or a denial of fundamental fairness. Nevertheless, we briefly address defendant's issue.

■ Various districts of the appellate court of this State have overwhelmingly held that the jury instructions for aggravated criminal sexual assault, a general intent crime, need not set forth a specific mental state. (See, *e.g., People v. Smith* (1991), 209 Ill. App. 3d 1043; *People v. Burton* (1990), 201 Ill. App. 3d 116; *People v. Sommerville* (1990), 193 Ill. App. 3d 161; *People v. Avila* (1989), 180 Ill. App. 3d 345; *People v. Leonard* (1988), 171 Ill. App. 3d 380; *People v. Ortiz* (1987), 155 Ill. App. 3d 786.) Moreover, none of these districts has determined that a different result is warranted following the supreme court's decision in *People v. Terrell* (1989), 132 Ill. 2d 178, relied on by defendant, to imply a mental state of intent or knowledge for the crime of aggravated criminal sexual assault (132 Ill. 2d at 209). In

fact, of those districts which have specifically addressed the effect of *Terrell* on their prior holding or were decided after *Terrell*, none has departed from its decision that it is not error to omit the implied mental state from the jury instructions for aggravated criminal sexual assault. That is because the *Terrell* opinion makes it clear that the mental state required for aggravated criminal sexual assault, an offense based on an act of sexual penetration by the use of force or threat of force (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2) (now codified, as amended, at 720 ILCS 5/12—14(a)(2) (West 1992))), naturally flows from the commission of the prohibited act (*Burton*, 201 Ill. App. 3d at 122) and, therefore, is implied by the act itself. *Terrell* does not require that the jury be instructed on the mental state implied to be an element of the offense of aggravated criminal sexual assault. Based on *Terrell*, and the precedent set by the various districts of the appellate court, we conclude that the jury instructions at issue here were proper. Accordingly, the instant issue was properly dismissed without an evidentiary hearing and properly disregarded by appellate counsel on direct appeal.

Last, we consider whether it was incompetent for appellate counsel not to have raised the issue that defendant was denied his constitutional rights to due process and a fair trial by the State's concealment, prior to trial, of the whereabouts of a State witness thereby precluding defense counsel from investigating the substance of her testimony and learning of areas of possible impeachment. We note first, as the court pointed out, that in alleging this particular constitutional violation defendant failed to support the allegation with affidavits or other evidence as required by the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—2 (now 725 ILCS 5/122—2 (West 1992))). Moreover, the record reveals that defendant's allegation was insufficient to require a hearing on his post-conviction petition on this basis.

The "concealed" witness to which defendant refers was his estranged wife. The record reveals that prior to trial the State offered to put defense counsel in telephone contact with defendant's wife. The record also shows that defendant telephoned his wife prior to trial and that, therefore, counsel had access to her telephone number through defendant. Further, counsel admitted on the day before trial commenced that he had been provided with Mrs. Franzen's address and phone number during the previous week. Also, prior to trial, the State tendered a written offer of proof as to the testimony Mrs. Franzen would give. Based on the contents of that offer, defense counsel indicated to the court that he had no problem with Mrs. Franzen's

testimony and withdrew his motion *in limine* to prohibit Mrs. Franzen from testifying. Under all these circumstances, we cannot say that the State's delay in disclosing the whereabouts of Mrs. Franzen prevented defense counsel from properly preparing for her testimony or from learning of potential areas of cross-examination.

Defendant also alleges that the State's concealment prevented defense counsel from discovering whether inducements in the form of threats of criminal prosecution or promises of protection from defendant influenced Mrs. Franzen's testimony. However, at a hearing prior to trial the prosecutor informed defense counsel that the State had not granted Mrs. Franzen immunity but had no intention of prosecuting Mrs. Franzen for her involvement. Thus, defense counsel had knowledge of a potential basis for impeachment of Mrs. Franzen prior to the beginning of trial.

■ We conclude that the State's delay in disclosing Mrs. Franzen's whereabouts did not constitute a denial of defendant's right to due process where, as here, the information defense counsel requested was provided prior to trial. We, therefore, find that appellate counsel's failure to raise this particular issue on appeal did not amount to incompetence, as the issue was without merit. (*People v. Lostutter* (1992), 227 Ill. App. 3d 1052, 1054.) Also, the trial court's denial of an evidentiary hearing on this issue was proper.

■ Under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.* (now 725 ILCS 5/122—1 *et seq.* (West 1992))), a defendant is only entitled to an evidentiary hearing if the allegations of his petition, together with the record of his trial and supporting affidavits, make a substantial showing of a violation of his constitutional rights. (*People v. Gacy* (1988), 125 Ill. 2d 117, 124.) For the reasons stated above, we find that defendant's petition for post-conviction relief presented no substantial showing of any violation of his constitutional rights. Consequently, the trial court's decision to dismiss defendant's petition without an evidentiary hearing was not manifest error.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS, P.J., and WOODWARD, J., concur.