THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLIFTON ROBINSON, Defendant-Appellant.

First District (1st Division)   No. 1—92—3734

Opinion filed June 30, 1994.—Rehearing denied August 2, 1994.

Rita Fry, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Diane Meyer, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, Clifton Robinson, was charged by indictment with two counts of aggravated criminal sexual assault and two counts of criminal sexual assault. Following a bench trial, defendant was found guilty of two counts of aggravated criminal sexual assault and sentenced to two consecutive terms of six years' imprisonment. On appeal, defendant contends that: (1) he was denied his constitutional

right to equal protection, where his conduct violated the provisions of two separate offenses, and he was sentenced for the greater offense; (2) he was charged under a faulty indictment which failed to allege his mental state; and (3) the trial court erred in sentencing him to consecutive sentences under the mandatory sentencing law. For the reasons stated herein, we affirm the judgment of the trial court.

The record reveals the following relevant facts. After a pretrial suppression hearing, the trial court entered a finding that defendant's statement in which he admitted to committing two sexual assaults was voluntary.

Defendant's case proceeded to a bench trial on April 3, 1992. At trial, M.P. testified on behalf of the State that she is 13 years old. On August 15, 1991, M.P. was on her way home from a park, when she encountered defendant. Defendant was on his porch and called to M.P. M.P. went to the porch to see what defendant wanted. Defendant asked M.P. if she was going to give him "some coochie," which M.P. understood to mean to have sex with him. M.P. said yes, and defendant went into his house to get L.G., defendant's seven-year-old cousin. When defendant returned, he said to M.P. "are you ready," and M.P. said yes.

M.P., defendant and L.G. walked to the railroad tracks a block away on Racine Avenue. They got up on a red truck, and defendant asked M.P. to suck his penis. M.P. said no. Defendant then asked L.G. to suck his penis, and she did so. At that time, defendant was in front of the truck and L.G. was on the truck, and defendant had his hands on L.G.'s head. M.P. was standing a few inches away. L.G. sucked defendant's penis for about three minutes. Then defendant told M.P. to lie down on the truck, and he pulled up her skirt, and pulled down her pants. Defendant then rubbed his penis against M.P.'s vagina. Soon some boys approached the tracks, and M.P. got up and pulled down her skirt. About five minutes later, the three left the tracks. Defendant told L.G. that he would give her a dollar if she would not tell her mother that he made her suck his penis. M.P. stated that she then went to her friend Tina's house. M.P. told her brother and Tina what had happened. On August 16, 1991, M.P. reported the incident to the police.

Chicago police officer Anthony Wilczak testified that on August 15, 1991, he and his partner, Officer Przybylski, received a call to investigate a sexual assault, and interviewed L.G. and M.P. The officers took the complainants to the railroad tracks at 1100 West 49th Street and observed an abandoned pickup truck.

Chicago police officer Terrence O'Connor testified that on August 16, 1991, he and his partner, Officer Boudreau, went to 1236 West

50th Street and interviewed complainant, L.G., and her mother, Y.G. At that time, they learned that defendant was L.G.'s cousin and lived at the same address, but was not home. The detectives attempted to locate defendant, but were unsuccessful and returned to the police station.

At about 10 p.m., the detectives received a call from defendant's mother, Sharon Robinson, who was at the home of her hairdresser at 95th Street and Constance. The detectives went to that address, encountered Robinson and defendant, and explained the allegations against defendant. At approximately 10:30 p.m., Robinson and defendant accompanied the detectives to the police station. The detectives escorted defendant up to their offices on the third floor, while Robinson remained on the first floor. Officer Przybylski arrived with L.G. and M.P. and told Officer O'Connor that defendant had sexually assaulted them.

At approximately 11 p.m., defendant was placed in an interview room and was advised of his *Miranda* rights. Defendant stated that he understood his rights. Officer O'Connor told defendant what the complainants had said. At the time of defendant's arrest, defendant stated that he was 17 years old.

On cross-examination, Officer O'Connor stated that defendant told him that when he, L.G., and M.P. were on the railroad tracks, he and M.P. were going to engage in an act of sexual intercourse, and that during this incident, L.G. grabbed his penis and put her mouth on it, in an effort to gain some sort of pop or candy treat.

Officer O'Connor stated that he spoke to the complainants again after speaking to defendant and that M.P.'s story was different. M.P. initially said that she saw an act between L.G. and defendant. Later, M.P. told the officer that she did attempt to have an act of sexual intercourse in the back of the pickup truck.

L.G. then testified that she is seven years old. On August 15, 1991, she went to Throop Park with defendant and M.P. After that, the three went to the railroad tracks and got onto a truck. L.G. stated that M.P. then took off her clothes, defendant got on top of M.P., and M.P. and defendant "did a nasty thing." After that, defendant threatened L.G. and told her not to tell anybody. Then defendant made L.G. "suck his stuff." L.G. stated that defendant grabbed her head, but that he did not do it hard. She said that he moved her head "right by his stuff." L.G. did not know another word for "stuff," but stated "it where he pee at." After that, the three left the tracks, and defendant said, "don't tell anybody." The next day, L.G. told her mother what had happened. On cross-examination, L.G. stated: "He was my best cousin that I ever had. But he still is, but, you know,

what he did was wrong." Following L.G.'s testimony, the State rested its case.

Marsha Brown testified on behalf of defendant that she watches defendant when his mother is at work. On August 15, 1991, defendant spent the night at her house and left the next day at about 2 p.m. Brown saw L.G. at about 3 p.m. on August 16, when L.G. came over to her house along with defendant to play with Brown's foster child, Crystal. On August 16, defendant stayed all night at Brown's house.

On cross-examination, Brown stated that her daughter, Tina, is 14 years old and is defendant's girlfriend. She admitted that there was a period of time on August 15, 1991, when she did not see defendant because she had sent him home.

Sharon Robinson, defendant's mother, testified that on August 15, 1991, she left her house to go to work at 2:05 p.m. She did not see defendant that morning because he had spent the previous night at Brown's house. At 2:16 p.m. and 3:21 p.m., defendant paged Robinson to call him at Brown's house. At 5:29 p.m., Robinson spoke to defendant on the telephone. The defense then rested.

On June 11, the trial court entered a finding of guilty on all four counts charged against defendant, but withheld judgment. On July 8, the trial court vacated its finding on count III and did not enter judgment on count IV. Following a subsequent hearing in aggravation and mitigation, the trial court sentenced defendant to two consecutive terms of six years' imprisonment on counts I and II, both for aggravated sexual assault, in accordance with mandatory sentencing provisions. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a).) Defendant's timely appeal followed.

Initially, defendant contends that the trial court erred in sentencing him on two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)), because his conduct also violated the provisions of the lesser offense of criminal sexual assault. Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(3).

Section 12—13(a)(3) provides in pertinent part:

"The accused commits criminal sexual assault if he or she:

* * *

(3) commits an act of sexual penetration with a victim who was under 18 years of age when the act was committed and the accused was a family member."

Section 12—14 sets forth the circumstances under which a criminal sexual assault is aggravated, providing in pertinent part:

"The accused commits aggravated criminal sexual assault if:

(1) the accused was 17 years of age or over and commits an act

of sexual penetration with a victim who was under 13 years of age when the act was committed." (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1).)

Defendant argues that he was convicted and sentenced as a nonprobationable, Class X offender for the greater offense of aggravated criminal sexual assault, despite his status as complainant L.G.'s cousin. Defendant notes that he would be eligible for probation under section 12—13(b) of the Criminal Code of 1961. Defendant argues that this sentencing error denied him his constitutional right to equal protection.

The State initially responds that defendant has waived this issue for review for failure to object at trial and in his post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, it is well established that a constitutional challenge to a statute may be raised at any time, including for the first time on appeal. *People v. Bryant* (1989), 128 Ill. 2d 448, 454, 539 N.E.2d 1221.

Defendant concedes that our supreme court has repeatedly found that no equal protection violation occurs when two statutes prohibit the same conduct but prescribe different punishments, but argues that our supreme court has restricted its holdings to situations in which the statutes in question require different elements of proof. Defendant cites, *e.g., People v. Brooks* (1976), 65 Ill. 2d 343, 357 N.E.2d 1169. There, the defendant was indicted for the felony offense of theft of property under section 16—1(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(b)(1)), and she argued that she should have been prosecuted for a misdemeanor under a section proscribing the same conduct in the Illinois Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, par. 11—21). Relying on *People v. Gordon* (1976), 64 Ill. 2d 166, 355 N.E.2d 3, our supreme court found that the two statutes had different elements of proof, and, therefore, there was no violation of equal protection under the statute which provided for the more severe penalty. (*Brooks*, 65 Ill. 2d at 347-48.) In the present case, defendant argues that because the offenses of aggravated criminal sexual assault and criminal sexual assault require identical elements of proof, even as the latter offense requires additional proof that the accused was a family member (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(3)), his equal protection guarantees have been violated.

●1 The fourteenth amendment to the Federal Constitution requires equal treatment between groups of persons similarly situated; it does not prohibit a State from treating different classes of persons differently. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477, 468 N.E.2d 1162.) Although this court has found that there may be some overlap between the offenses of criminal sexual assault and aggra-

vated criminal sexual assault, this court has determined that each offense proscribes distinctly different conduct and each has its own specific penalty. Aggravated criminal sexual assault is different from criminal sexual assault because the former has various aggravating factors, at least one of which must be present to constitute the offense. (*People v. Printy* (1992), 232 Ill. App. 3d 735, 742, 598 N.E.2d 346.) The aggravating offense requires that the accused be over 17 years of age, while the lesser offense does not so provide. The aggravating offense further provides that the victim be under 13 years of age, while the lesser offense provides that the victim be under 18 years of age. Accordingly, in the present case, defendant, having been convicted of violating the aggravated criminal sexual assault provision, cannot claim to be a member of a group similarly situated to those persons who violate the criminal sexual assault provision. (See *Printy*, 232 Ill. App. 3d at 742.) Under the facts of the present case, defendant has not shown a violation of his equal protection rights.

Next, defendant contends that the indictment that charged him with the aggravated criminal sexual assault of M.P. constitutes reversible error because it failed to allege a mental state. The indictment stated as follows:

> "The Grand Jurors *** upon their oaths present that on or about August 15, 1991 at and within the County of Cook Clifton Robinson committed the offense of aggravated criminal sexual assault in that he was seventeen years of age or over and committed an act of sexual penetration upon M.P., to wit: contact between Clifton Robinson's penis and M.P.'s vagina, and M.P. was under thirteen years of age when the act of sexual penetration was committed, in violation of chapter 38, section 12—14—B(1), of the Illinois Revised Statutes 1989, as amended."

Defendant argues that the indictment fatally failed to allege that defendant knew that M.P. was under 13 years old when he committed the assault and that he was prejudiced by this omission.

The State responds that defendant has waived this issue for review for failure to object to the indictment in any motion at any time prior to, during, or post trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, the issue of the inadequacy of an indictment that may prejudice the preparation of defenses is reviewable for the first time on appeal under *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437.

●2 An indictment charging an accused is not defective for failure to allege the defendant's mental state where the statute defining the offense charged does not include a specific mental state. (*People v. Le-*

*onard* (1988), 171 Ill. App. 3d 380, 384, 526 N.E.2d 397; *People v. Thompson* (1984), 125 Ill. App. 3d 665, 672-74, 466 N.E.2d 380.) This court has determined that the crime of aggravated criminal sexual assault is a general intent crime and does not require the allegation of a specific mental state. *People v. Franzen* (1993), 251 Ill. App. 3d 813, 831, 622 N.E.2d 877, 892; *People v. Burton* (1990), 201 Ill. App. 3d 116, 118, 558 N.E.2d 1369; *Leonard*, 171 Ill. App. 3d at 384.

The indictment in the present case contains the date, place, and description of the offense charged, along with the precise citation of the offense charged. We therefore find that the indictment sufficiently apprised defendant of the offense charged, in order to enable him to prepare his defense.

Finally, defendant contends that the trial court erred in sentencing him to two consecutive sentences under section 5—9—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a)), which provides for mandatory consecutive sentencing as follows:

> "(a) When multiple sentences of imprisonment are imposed on a defendant at the same time, or when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State *** the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4 (a).)

Defendant argues that consecutive sentences are not mandatory here, because his two aggravated criminal sexual assaults were committed against two different victims and therefore cannot be construed as committed during a "single course of conduct and with no substantial change in the nature of the criminal objective." In support, defendant relies on *People v. Bole* (1993), 155 Ill. 2d 188, 613 N.E.2d 740. There, our supreme court found that the mandatory sentencing statute did not warrant consecutive sentencing where the offenses of aggravated criminal sexual assault are committed several days apart, because the acts could not be construed as within a single course of conduct. The supreme court held:

> "We have determined that the statute plainly requires the

imposition of consecutive sentences only when the subject offenses are committed in a single course of conduct \*\*\*." *Bole*, 155 Ill. 2d at 198.

Defendant further relies on *People v. Edwards* (1994), 259 Ill. App. 3d 151, where this court found it necessary for the trial court to determine whether there was a "substantial change in the nature of the criminal objective" before consecutive sentences could be imposed for the two offenses of aggravated criminal sexual assault and armed robbery. There, the offenses occurred in the same evening, and involved the same victim. The trial court issued consecutive sentences without making a determination that the offenses were committed in a single course of conduct. *Edwards*, 259 Ill. App. 3d at 155-56 (remanding the case to the trial court for resentencing on the aggravated sexual assault charge).

●3 *Edwards* is factually distinguishable from the present case. Here, the facts show that the two criminal acts of defendant occurred approximately three minutes apart, and in the same location. The record shows that defendant's criminal objective was to engage in sexual acts and that he intended M.P. and L.G. as the participants. We are not persuaded that the record shows a departure from a single course of conduct in the present case. The record further shows that the trial court made the required finding as follows:

"The state's attorney is correct I know on this question of consecutive sentences because these were separate physical acts, there was an interrelationship between the acts with the seven-year-old and the acts with the twelve-year-old.

To a great extent it was one single course of conduct. Separate judgments of conviction can stand because they were separate acts, but the statute does mandate the imposition of the consecutive sentences where one of those convictions was or aggravated criminal sexual assault. That is what we have here."

The record further shows that the trial court took into consideration defendant's age and lack of criminal record in sentencing him to the minimum of six years for each conviction. Thus, the trial court properly sentenced defendant to consecutive terms of imprisonment.

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.