THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CRAIG BOFMAN, Defendant-Appellant.

First District (5th Division)   No. 1—94—1866

Opinion filed September 13, 1996.

548

James J. Cutrone and Santo J. Volpe, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Following a bench trial, defendant Craig Bofman was found guilty of aggravated criminal sexual assault and sentenced to nine years' imprisonment. Defendant appeals and we affirm.

M.C. testified that on March 15, 1992, when he was nine years old, he attended a Purim carnival at the Bernard Horwich Jewish Community Center (JCC) with his mother, brother and sister. They left the JCC but M.C. returned to the JCC at 4 p.m. to go swimming. M.C. planned to later meet his brothers Robbie and Elly and a friend Yaakov. M.C. went to the locker room and changed into his swim trunks. He then removed his swim trunks and entered the shower. Defendant was in the shower next to M.C. Defendant was naked. Defendant asked M.C. if M.C. could rub some soap on defendant's back. M.C. said "sure" and put soap on defendant's back. Defendant asked M.C. if M.C. wanted soap put on his back, to which M.C. replied "yes." Defendant put soap on M.C.'s back.

M.C. testified that he rinsed the soap off his back and went to the towel room. Defendant then came into the towel room. Both M.C. and defendant were naked. Without saying anything to M.C., defendant placed his hands under both of M.C.'s armpits and lifted M.C. up in the air until M.C.'s head touched the ceiling. As defendant

lifted M.C., defendant's penis touched M.C.'s stomach and penis. Defendant then put M.C. down and then lifted him again. Defendant's penis again touched M.C.'s penis.

M.C. testified that he and defendant did not talk about the Purim carnival, nor the weight room, nor how strong defendant was. M.C. denied that defendant said he could pick M.C. up and press him in the air like a barbell because defendant was so strong.

M.C. then went to the shower room, put on his swimming trunks and went to the pool area. He waited on a bench for his friend Yaakov. He did not tell any adults in the pool area what had happened because he was scared. About 15 minutes later, Yaakov came to the pool area and M.C. told him what had happened. M.C. pointed defendant out to Yaakov. Yaakov told M.C. that they should tell somebody what had happened. M.C. and Yaakov then went to the locker room and got dressed. They played basketball in the gym for a few minutes. M.C. and Yaakov then went upstairs to the front desk and waited for M.C.'s brothers to arrive. Two or three minutes later, M.C.'s brothers arrived and M.C. told them what had happened.

M.C., Yaakov, and M.C.'s brothers then went to see the director of the JCC, Emmit Engram, and told him what had happened. M.C. and Yaakov gave Engram a description of defendant. M.C. went with Engram to the pool area, but they did not see defendant. Later that evening, M.C. picked defendant out of a lineup.

Engram testified that he went to the pool area with Yaakov to look for defendant, but they did not see him. Engram retrieved two guest passes from the front desk, one of which had defendant's name, address and telephone number.

Chicago police officer Athena Cordogan testified that she met with M.C. at the JCC and M.C. told her that a man had twice picked him up by the armpits and, while raising him up, rubbed his penis against M.C.'s penis. According to Officer Cordogan, M.C.'s face was flushed, his eyes were watery and he appeared to be shaken. M.C. gave the officer a description of defendant. Officer Cordogan was given defendant's guest pass and checked the telephone book to verify the information on the pass. Officer Cordogan spoke with JCC employee Donna Nutgall, and Nutgall informed Officer Cordogan that she recalled what defendant looked like and that he had rushed out of the building. Based on this information, defendant was arrested that evening.

Jerry Kreiman, a psychiatric clinical social worker, testified for the defense that he knew defendant in a therapeutic setting and had had intermittent contact with defendant since defendant was six years old. Kreiman testified that he found defendant to be truthful and law abiding.

Defendant testified that he went to the JCC and looked at the new weight room. He then showered, which was a requirement before entering the pool. He went into the pool, but after finding it too cold, he went back into the shower to wash off the chlorine smell. Defendant began to talk to M.C., who was also in the shower. Defendant testified he asked M.C. if he had been to the Purim carnival. Defendant then asked M.C. if he wanted soap rubbed on his back, and M.C. said "yes." Defendant then asked M.C. to rub soap on defendant's back and M.C. agreed. Defendant asked M.C. if he had seen the weight room and told M.C. that he planned to join the weight room. Defendant testified that he started "kidding around" with M.C. and asked M.C. if he wanted to see how strong defendant was and whether defendant could "press" M.C. over his head. M.C. responded "yes." Defendant testified that he then put his hands underneath M.C.'s arms, lifted him in the air, lowered him, and then lifted him again, like "lifting weights, barbells." While he lifted M.C., M.C.'s head came in contact with the ceiling. Defendant denied that his penis came into contact with M.C.'s penis, but testified that if M.C.'s penis came into contact with defendant's body, it would have accidently made contact with defendant's stomach when defendant lowered M.C. Defendant testified that penis-to-penis contact could not have occurred because he is a large man with a large protruding stomach and has a small inverted penis. Defendant testified that his lifting M.C. was horseplay and it was "foolish and very stupid." Defendant testified that, after showering, he did not follow M.C. to another room.

The trial court found defendant guilty of aggravated criminal sexual assault and sentenced him to nine years' imprisonment. Defendant appeals, contending that: (1) the aggravated criminal sexual assault statute is unconstitutional because it fails to prescribe a specific mental state; (2) the trial court erred in finding defendant guilty of aggravated criminal sexual assault, rather than the lesser included offense of aggravated criminal sexual abuse; (3) the trial court prejudged defendant's guilt; and (4) defendant was not proven guilty beyond a reasonable doubt of aggravated criminal sexual assault.

■ Defendant first claims that the aggravated criminal sexual assault statute (720 ILCS 5/12—14 (West 1994)) is unconstitutional because it fails to prescribe a mental state. Despite defendant's lengthy recitation of United States Supreme Court cases which have little if any applicability to the resolution of this issue, Illinois courts have held that the aggravated criminal sexual assault statute is indeed constitutional although it does not specify a mental state. In

*People v. Terrell*, 132 Ill. 2d 178, 547 N.E.2d 145 (1989), the defendant argued that the aggravated criminal sexual assault statute was unconstitutional because it punished "sexual penetration," which does not require a specific mental state, more severely than it punished the lesser offense of aggravated criminal sexual abuse, which requires that the touching or fondling be either intentional or knowing. The court rejected defendant's argument, stating that a mental state of either intent or knowledge is implied in the aggravated criminal sexual assault statute for offenses involving sexual penetration. See also *People v. Jimenez*, 191 Ill. App. 3d 13, 547 N.E.2d 616 (1989); *People v. Burmeister*, 147 Ill. App. 3d 218, 497 N.E.2d 1212 (1986).

■ Defendant also claims that the indictment was insufficient because it fails to allege that defendant acted with a specific mental state. However, an indictment charging an accused is not defective for failure to allege a mental state where the statute defining the offense charged does not include a mental state. *People v. Robinson*, 265 Ill. App. 3d 882, 637 N.E.2d 1147 (1994). The crime of aggravated criminal sexual assault is a general intent crime and does not require the allegation of a specific mental state. *People v. Franzen*, 251 Ill. App. 3d 813, 622 N.E.2d 877 (1993); *People v. Burton*, 201 Ill. App. 3d 116, 558 N.E.2d 1369 (1990). We further find that the indictment adequately informed defendant of the facts of the offense with which he was charged.

■ Defendant next contends that the trial court erred in concluding that there was no lesser included offense of which he could be convicted. A person commits aggravated criminal sexual assault if the accused was 17 years of age or over and committed an act of sexual penetration with a victim who was under 13 years of age when the act was committed. 720 ILCS 5/12—14(b)(1) (West 1994). Sexual penetration is defined as:

> "[A]ny contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus or another person, or any intrusion however slight, of any part of the body of one person *** or object into the sex organ or anus of another person ***." 720 ILCS 5/12—12(f) (West 1994).

Aggravated criminal sexual abuse is a lesser included offense of aggravated criminal sexual assault. *People v. Finley*, 178 Ill. App. 3d 301, 533 N.E.2d 94 (1988). A person commits aggravated criminal sexual abuse if he is 17 years of age or over and commits an act of sexual conduct with a victim who is under 13 years of age when the act is committed. 720 ILCS 5/12—16(c)(1) (West 1994). "Sexual conduct" is defined, in pertinent part, as "any intentional or knowing touching or fondling *** by [an] accused, either directly or through

clothing, of the sex organs, anus or breast of the victim or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the *** accused." 720 ILCS 5/12—12(e) (West 1994).

■ In finding defendant guilty of criminal sexual assault, the trial court stated: "There is no lesser included offense on this case that I can find him guilty of other than criminal sexual abuse. And the facts of this case do not support that lesser finding." It is therefore clear that the trial court recognized that aggravated criminal sexual abuse is a lesser included offense of aggravated criminal sexual assault, but determined that the facts of this case establish defendant's guilt of aggravated criminal sexual assault.

We cannot say that the trial court was unjustified in finding defendant guilty of aggravated criminal sexual assault rather than the lesser included offense of aggravated criminal sexual abuse. The 34-year-old defendant admitted that he lifted the naked nine-year-old into the air. M.C. testified that during these two lifts, defendant's penis touched his penis. As noted above, the sexual penetration necessary to support a conviction of aggravated criminal sexual assault need only be slight contact between the sex organ of one person and the sex organ of another person. See *People v. Hall*, 194 Ill. App. 3d 532, 551 N.E.2d 763 (1990) (defendant's act of placing his penis on the victim's vagina constituted sexual penetration under the aggravated criminal sexual assault statute). The evidence therefore established defendant's guilt of aggravated criminal sexual assault.

■ Defendant next contends that the trial court decided, prior to the conclusion of trial, the credibility of the witnesses and that defendant was guilty. Defendant takes issue with the trial court's comment during sentencing:

"When I listened to [M.C.] testify, I had absolutely no doubt that he was telling the truth about what happened that day. When I listened to [defendant] testify, I had absolutely no doubt that [defendant] knew what he did was wrong that day."

Defendant claims that the trial court prejudged the credibility of the witnesses without listening to other witnesses who impeached or contradicted M.C. However, we do not interpret the trial court's use of the word "when" as establishing that the trial court prejudged defendant. In *People v. Diaz*, 1 Ill. App. 3d 988, 275 N.E.2d 210 (1971), cited by defendant, the trial court clearly prejudged defendant by stating three times before all the evidence had been introduced and the trial had been concluded that defendant was guilty. The trial court's comment defendant takes issue with in the instant case, however, was not made until sentencing. Furthermore, the trial court

here carefully listened to and considered all of the testimony and evidence introduced at trial.

It is within the province of the trier of fact to weigh the credibility of witnesses, draw reasonable inferences from their testimony and resolve conflicts in the evidence. *People v. Felella*, 131 Ill. 2d 525, 546 N.E.2d 492 (1989). That is exactly what the trial court did here. At the close of the evidence, the trial court noted that it found M.C. to be a "very alert, intelligent child." The court noted that there were some contradictions in M.C.'s testimony, but that even adult witnesses have contradictions in their testimony and none of the contradictions were on "major points" regarding the sexual assault. The trial court also explicitly explained why it did not find defendant's testimony credible.

■ Defendant's last contention is that he was not proved guilty beyond a reasonable doubt. We must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Jimerson*, 127 Ill. 2d 12, 535 N.E.2d 889 (1989). Determinations of the credibility of witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from the evidence are the responsibilities of the trier of fact. *People v. Steidl*, 142 Ill. 2d 204, 568 N.E.2d 837 (1991).

■ Defendant admitted that he twice lifted the naked nine-year-old M.C. into the air. M.C. testified that each time he was lifted, defendant's penis touched M.C.'s penis. The trial court found M.C. to be a credible witness and determined that the evidence established defendant's guilt beyond a reasonable doubt. Defendant claims that evidence did not establish the defendant's guilt beyond a reasonable doubt since there were inconsistencies in the witnesses' testimony. The trial court acknowledged that there were inconsistencies between some of M.C.'s testimony and that of other witnesses, yet found that these inconsistencies were on minor points and did not relate to the facts of the assault.

One such inconsistency defendant relies upon is M.C.'s testimony that when he went into the shower room he was the only one there and that defendant came in later. Yet, one of the detectives testified that he believed M.C. told him that when he entered the shower room, defendant was already in the shower. We do not find any such inconsistency to be significant.

M.C. also testified that the assault occurred in the towel room, yet the police report stated that M.C. said that defendant picked him up once in the shower and once in the towel room. What is significant is not where the assault occurred, but that defendant picked M.C. up twice, each time touching M.C.'s penis with his penis.

Defendant also points out that M.C. testified that he toured the pool area with Engram, looking for defendant, while Engram testified that he toured the pool area with Yaakov. Once again, we do not find that this inconsistency detracts from M.C.'s testimony so to require reversal of defendant's conviction.

Defendant also claims that M.C.'s actions after the assault, in not immediately reporting the assault, indicate that M.C.'s testimony was incredible. However, we find nothing unusual in the nine-year-old's actions in first reporting the incident to his friend, then to his brothers and then reporting it to an adult whom he knew well.

Although defendant testified that he lifted M.C. merely to show his strength and any contact between defendant's penis and M.C.'s penis could not have occurred, M.C. testified that no such conversation regarding defendant's strength occurred and that penis-to-penis contact did occur. The trial court evaluated the credibility of the witnesses and determined that M.C.'s testimony was more credible than defendant's testimony. Under our standard of review, we have no basis for reversing the trial court's decision.

Accordingly, for the reasons set forth above, defendant's conviction is affirmed.

Affirmed.

GORDON and COUSINS, JJ., concur.