FIFTH DIVISION
 September 13, 1996








No. 1-94-1866

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County.
 )
 v. ) 
 )
CRAIG BOFMAN, ) Honorable
 ) Bertina Lampkin,
 Defendant-Appellant. ) Judge Presiding.

 PRESIDING JUSTICE McNULTY delivered the opinion of the court:
 Following a bench trial, defendant Craig Bofman was found
guilty of aggravated criminal sexual assault and sentenced to nine
years' imprisonment. Defendant appeals and we affirm.
 M.C. testified that on March 15, 1992, when he was nine years
old, he attended a Purim carnival at the Bernard Horwich Jewish
Community Center (JCC) with his mother, brother and sister. They
left the JCC but M.C. returned to the JCC at 4 p.m. to go swimming. 
M.C. planned to later meet his brothers Robbie and Elly and a
friend Yaakov. M.C. went to the locker room and changed into his
swim trunks. He then removed his swim trunks and entered the
shower. Defendant was in the shower next to M.C. Defendant was
naked. Defendant asked M.C. if M.C. could rub some soap on
defendant's back. M.C. said "sure" and put soap on defendant's
back. Defendant asked M.C. if M.C. wanted soap put on his back, to
which M.C. replied "yes." Defendant put soap on M.C.'s back. 
 M.C. testified that he rinsed the soap off his back and went
to the towel room. Defendant then came into the towel room. Both
M.C. and defendant were naked. Without saying anything to M.C.,
defendant placed his hands under both of M.C.'s armpits and lifted
M.C. up in the air until M.C.'s head touched the ceiling. As
defendant lifted M.C., defendant's penis touched M.C.'s stomach and
penis. Defendant then put M.C. down and then lifted him again. 
Defendant's penis again touched M.C.'s penis. 
 M.C. testified that he and defendant did not talk about the
Purim carnival, nor the weight room, nor how strong defendant was. 
M.C. denied that defendant said he could pick M.C. up and press him
in the air like a barbell because defendant was so strong.
 M.C. then went to the shower room, put on his swimming trunks
and went to the pool area. He waited on a bench for his friend
Yaakov. He did not tell any adults in the pool area what had
happened because he was scared. About 15 minutes later, Yaakov
came to the pool area and M.C. told him what had happened. M.C.
pointed defendant out to Yaakov. Yaakov told M.C. that they should
tell somebody what had happened. M.C. and Yaakov then went to the
locker room and got dressed. They played basketball in the gym for
a few minutes. M.C. and Yaakov then went upstairs to the front
desk and waited for M.C.'s brothers to arrive. Two or three
minutes later, M.C.'s brothers arrived and M.C. told them what had
happened. 
 M.C., Yaakov, and M.C.'s brothers then went to see the
director of the JCC, Emmit Engram, and told him what had happened. 
M.C. and Yaakov gave Engram a description of defendant. M.C. went
with Engram to the pool area, but they did not see defendant. 
Later that evening, M.C. picked defendant out of a lineup.
 Engram testified that he went to the pool area with Yaakov to
look for defendant, but they did not see him. Engram retrieved two
guest passes from the front desk, one of which had defendant's
name, address and telephone number. 
 Chicago police officer Athena Cordogan testified that she met
with M.C. at the JCC and M.C. told her that a man had twice picked
him up by the armpits and, while raising him up, rubbed his penis
against M.C.'s penis. According to Officer Cordogan, M.C.'s face
was flushed, his eyes were watery and he appeared to be shaken. 
M.C. gave the officer a description of defendant. Officer Cordogan
was given defendant's guest pass and checked the telephone book to
verify the information on the pass. Officer Cordogan spoke with
JCC employee Donna Nutgall, and Nutgall informed Officer Cordogan
that she recalled what defendant looked like and that he had rushed
out of the building. Based on this information, defendant was
arrested that evening.
 Jerry Kreiman, a psychiatric clinical social worker, testified
for the defense that he knew defendant in a therapeutic setting and
had had intermittent contact with defendant since defendant was six
years old. Kreiman testified that he found defendant to be
truthful and law abiding.
 Defendant testified that he went to the JCC and looked at the
new weight room. He then showered, which was a requirement before
entering the pool. He went into the pool, but after finding it too
cold, he went back into the shower to wash off the chlorine smell. 
Defendant began to talk to M.C., who was also in the shower. 
Defendant testified he asked M.C. if he had been to the Purim
carnival. Defendant then asked M.C. if he wanted soap rubbed on
his back, and M.C. said "yes." Defendant then asked M.C. to rub
soap on defendant's back and M.C. agreed. Defendant asked M.C. if
he had seen the weight room and told M.C. that he planned to join
the weight room. Defendant testified that he started "kidding
around" with M.C. and asked M.C. if he wanted to see how strong
defendant was and whether defendant could "press" M.C. over his
head. M.C. responded "yes." Defendant testified that he then put
his hands underneath M.C.'s arms, lifted him in the air, lowered
him, and then lifted him again, like "lifting weights, barbells." 
While he lifted M.C., M.C.'s head came in contact with the ceiling. 
Defendant denied that his penis came into contact with M.C.'s
penis, but testified that if M.C.'s penis came into contact with
defendant's body, it would have accidently made contact with
defendant's stomach when defendant lowered M.C. Defendant
testified that penis-to-penis contact could not have occurred
because he is a large man with a large protruding stomach and has
a small inverted penis. Defendant testified that his lifting M.C.
was horseplay and it was "foolish and very stupid." Defendant
testified that, after showering, he did not follow M.C. to another
room.
 The trial court found defendant guilty of aggravated criminal
sexual assault and sentenced him to nine years' imprisonment. 
Defendant appeals, contending that: (1) the aggravated criminal
sexual assault statute is unconstitutional because it fails to
prescribe a specific mental state; (2) the trial court erred in
finding defendant guilty of aggravated criminal sexual assault,
rather than the lesser included offense of aggravated criminal
sexual abuse; (3) the trial court prejudged defendant's guilt; and
(4) defendant was not proven guilty beyond a reasonable doubt of
aggravated criminal sexual assault.
 Defendant first claims that the aggravated criminal sexual
assault statute (720 ILCS 5/12-14 (West 1994)) is unconstitutional
because it fails to prescribe a mental state. Despite defendant's
lengthy recitation of United States Supreme Court cases which have
little if any applicability to the resolution of this issue,
Illinois courts have held that the aggravated criminal assault
statute is indeed constitutional although it does not specify a
mental state. In People v. Terrell, 132 Ill. 2d 178, 547 N.E.2d
145 (1989), the defendant argued that the aggravated criminal
sexual assault statute was unconstitutional because it punished
"sexual penetration," which does not require a specific mental
state, more severely than it punished the lesser offense of
aggravated criminal sexual abuse, which requires that the touching
or fondling be either intentional or knowing. The court rejected
defendant's argument, stating that a mental state of either intent
or knowledge is implied in the aggravated criminal sexual assault
statute for offenses involving sexual penetration. See also People
v. Jimenez, 191 Ill. App. 3d 13, 547 N.E.2d 616 (1989); People v.
Burmeister, 147 Ill. App. 3d 218, 497 N.E.2d 1212 (1986). 
 Defendant also claims that the indictment was insufficient
because it fails to allege that defendant acted with a specific
mental state. However, an indictment charging an accused is not
defective for failure to allege a mental state where the statute
defining the offense charged does not include a mental state. 
People v. Robinson, 265 Ill. App. 3d 882, 637 N.E.2d 1147 (1994). 
The crime of aggravated criminal sexual assault is a general intent
crime and does not require the allegation of a specific mental
state. People v. Franzen, 251 Ill. App. 3d 813, 622 N.E.2d 877
(1993); People v. Burton, 201 Ill. App. 3d 116, 558 N.E.2d 1369
(1990). We further find that the indictment adequately informed
defendant of the facts of the offense with which he was charged. 
 Defendant next contends that the trial court erred in
concluding that there was no lesser included offense of which he
could be convicted. A person commits aggravated criminal sexual
assault if the accused was 17 years of age or over and committed an
act of sexual penetration with a victim who was under 13 years of
age when the act was committed. 720 ILCS 5/12-14(b)(1)(West 1994). 
Sexual penetration is defined as:
 "[A]ny contact, however slight, between the sex
 organ or anus of one person by an object, the sex organ,
 mouth or anus or another person, or any intrusion however
 slight, of any part of the body of one person *** or
 object into the sex organ or anus of another person ***."
 720 ILCS 5/12-12(f) (West).
 Aggravated criminal sexual abuse is a lesser included offense of
aggravated criminal sexual assault. People v. Finley, 178 Ill.
App. 3d 301, 533 N.E.2d 94 (1988). A person commits aggravated
criminal sexual abuse if he is 17 years of age or over and commits
an act of sexual conduct with a victim who is under 13 years of age
when the act is committed. 720 ILCS 5/12-16(c)(1)(West 1994). 
"Sexual conduct" is defined, in pertinent part, as "any intentional
or knowing touching or fondling *** by [an] accused, either
directly or through clothing, of the sex organs, anus or breast of
the victim or any part of the body of a child under 13 years of
age, for the purpose of sexual gratification or arousal of the ***
accused." 720 ILCS 5/12-12(e)(West 1994).
 In finding defendant guilty of criminal sexual assault, the
trial court stated: "There is no lesser included offense on this
case that I can find him guilty of other than criminal sexual
abuse. And the facts of this case do not support that lesser
finding." It is therefore clear that the trial court recognized
that aggravated criminal sexual abuse is a lesser included offense
of aggravated criminal sexual assault, but determined that the
facts of this case establish defendant's guilt of aggravated
criminal sexual assault.
 We cannot say that the trial court was unjustified in finding
defendant guilty of aggravated criminal sexual assault rather than
the lesser included offense of aggravated criminal sexual abuse. 
The 34-year-old defendant admitted that he lifted the naked nine-
year-old into the air. M.C. testified that during these two lifts,
defendant's penis touched his penis. As noted above, the sexual
penetration necessary to support a conviction of aggravated
criminal sexual assault need only be slight contact between the sex
organ of one person and the sex organ of another person. See
People v. Hall, 194 Ill. App. 3d 532, 551 N.E.2d 763
(1990)(defendant's act of placing his penis on the victim's vagina
constituted sexual penetration under the aggravated criminal sexual
assault statute.) The evidence therefore established defendant's
guilt of aggravated criminal sexual assault.
 Defendant next contends that the trial court decided, prior to
the conclusion of trial, the credibility of the witnesses and that
defendant was guilty. Defendant takes issue with the trial court's
comment during sentencing:
 "When I listened to [M.C.] testify, I had absolutely no
 doubt that he was telling the truth about what happened
 that day. When I listened to [defendant] testify, I had
 absolutely no doubt that [defendant] knew what he did was
 wrong that day." 
 Defendant claims that the trial court prejudged the credibility of
the witnesses without listening to other witnesses who impeached
or contradicted M.C. However, we do not interpret the trial
court's use of the word "when" as establishing that the trial
court prejudged defendant. In People v. Diaz, 1 Ill. App. 3d 988,
275 N.E.2d 210 (1971), cited by defendant, the trial court clearly
prejudged defendant by stating three times before all the evidence
had been introduced and the trial had been concluded that
defendant was guilty. The trial court's comment defendant takes
issue with in the instant case, however, was not made until
sentencing. Furthermore, the trial court here carefully listened
to and considered all of the testimony and evidence introduced at
trial. 
 It is within the province of the trier of fact to weigh the
credibility of witnesses, draw reasonable inferences from their
testimony and resolve conflicts in the evidence. People v.
Felella, 131 Ill. 2d 525, 546 N.E.2d 492 (1989). That is exactly
what the trial court did here. At the close of the evidence, the
trial court noted that it found M.C. to be a "very alert,
intelligent child." The court noted that there were some
contradictions in M.C.'s testimony, but that even adult witnesses
have contradictions in their testimony and none of the
contradictions were on "major points" regarding the sexual
assault. The trial court also explicitly explained why it did not
find defendant's testimony credible. 
 Defendant's last contention is that he was not proved guilty
beyond a reasonable doubt. We must determine whether, after
viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found all the
essential elements of the offense beyond a reasonable doubt. 
People v. Collins, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). A
criminal conviction will not be set aside on review unless the
evidence is so improbable or unsatisfactory that there remains a
reasonable doubt of the defendant's guilt. People v. Jimerson,
127 Ill. 2d 12, 535 N.E.2d 889 (1989). Determinations of the
credibility of witnesses, the weight to be given their testimony
and the reasonable inferences to be drawn from the evidence are
the responsibilities of the trier of fact. People v. Steidl, 142
Ill. 2d 204, 568 N.E.2d 837 (1991). 
 Defendant admitted that he twice lifted the naked nine-year-
old M.C. into the air. M.C. testified that each time he was
lifted, defendant's penis touched M.C's penis. The trial court
found M.C. to be a credible witness and determined that the
evidence established defendant's guilt beyond a reasonable doubt. 
Defendant claims that evidence did not establish the defendant's
guilt beyond a reasonable doubt since there were inconsistencies
in the witnesses' testimony. The trial court acknowledged that
there were inconsistencies between some of M.C.'s testimony and
that of other witnesses, yet found that these inconsistencies were
on minor points and did not relate to the facts of the assault. 
 One such inconsistency defendant relies upon is M.C.'s 
testimony that when he went into the shower room he was the only
one there and that defendant came in later. Yet, one of the
detectives testified that he believed M.C. told him that when he
entered the shower room, defendant was already in the shower. We
do not find any such inconsistency to be significant.
 M.C. also testified that the assault occurred in the towel
room, yet the police report stated that M.C. said that defendant
picked him up once in the shower and once in the towel room. What
is significant is not where the assault occurred, but that
defendant picked M.C. up twice, each time touching M.C.'s penis
with his penis. 
 Defendant also points out that M.C. testified that he toured
the pool area with Engram, looking for defendant, while Engram
testified that he toured the pool area with Yaakov. Once again,
we do not find that this inconsistency detracts from M.C.'s
testimony so to require reversal of defendant's conviction.
 Defendant also claims that M.C.'s actions after the assault,
in not immediately reporting the assault, indicate that M.C.'s
testimony was incredible. However, we find nothing unusual in the
nine-year-old's actions in first reporting the incident to his
friend, then to his brothers and then reporting it to an adult
whom he knew well. 
 Although defendant testified that he lifted M.C. merely to
show his strength and any contact between defendant's penis and
M.C.'s penis could not have occurred, M.C. testified that no such
conversation regarding defendant's strength occurred and that
penis-to-penis contact did occur. The trial court evaluated the
credibility of the witnesses and determined that M.C.'s testimony
was more credible than defendant's testimony. Under our standard
of review, we have no basis for reversing the trial court's
decision.
 Accordingly, for the reasons set forth above, defendant's
conviction is affirmed.
 Affirmed. 
 GORDON and COUSINS, JJ., concur.